## Benjamin Mossler et al. v. Henry Jacobs et al.

1. TRADE MARKS—*Infringement of.*—Fair competition in business is legitimate, and promotes the public good, but an unfair appropriation of another's business by using his name or an imitation thereof, calcu-

lated to deceive the public, is not permissible and will be enjoined in equity.

2.    SAME—*Things to be Considered.*—A court of equity is not bound to interfere where ordinary attention will enable a purchaser to discriminate between the trade-marks used on goods manufactured by different parties; nevertheless the character of the article, the use to which it is put, and the kind of people who are likely to ask for it, as well as the manner in which it is probable it will be ordered, must not be lost sight of.

3.    SAME—"*Six Little Tailors.*"—The court regards the words "Six Big Tailors" as so similar to the name of "Six Little Tailors" that they are calculated to deceive the unwary; confusion is likely to arise therefrom, and purchasers entrapped into buying what they did not intend to buy of appellants when intending to buy of appellee.

4.    MAXIMS IN EQUITY—"*Clean Hands.*"—The maxim that one must come into equity with clean hands is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern.

**Injunction,** to restrain the use of a trade name. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 5, 1896.

CHARLTON & COPELAND, attorneys for appellants.

L. D. CONDEE and LOUIS BOISOT, JR., attorneys for appellees.

The bill of complaint of the appellees alleges that they have been engaged in the tailoring business in the State of New York and advertising the same under the style of "Six Little Tailors," for the last past fifteen years, and that during a greater portion of said time they have had branch stores in several of the eastern cities, and that as recently as the month of March of this year they opened a branch store under the same name in the city of Chicago, which name of "Six Little Tailors," they allege, constitutes their trade-mark and trade name.

They also allege, among other things, that the appellants, some time in the month of February of this year, opened a tailoring establishment at No. 357–359 State street, under

the firm name and style of the "Six Big Tailors," which style of name appellees allege and claim to be an infringement upon the name adopted by them, to wit, "Six Little Tailors."

The appellants, in their answer to the appellees' bill of complaint, among other things, allege that the court below had no jurisdiction over the subject-matter involved in this litigation, and deny that the appellees had, or could have, any property right or trade-mark in the words "Six Little Tailors;" they also claim and allege in their said answer that the use of the words "Six Big Tailors," in no manner infringes upon the words "Six Little Tailors;" and insist that they, the appellants, have the right to use the words "Six Big Tailors" as their trade name.

The evidence of complainants shows that in November, 1895, they first took preliminary steps looking toward the establishment of a branch store in Chicago under the style of "Six Little Tailors;" that they advertised in the way of posters, circulars and newspapers prior to their opening of their store in March, 1896, and spent some money in that direction; also shows that prior to that time, and for a period probably of fifteen years, they had two stores in New York City, one in Buffalo, one in Philadelphia, one in Boston, one in Washington, one in Pittsburg and one in Cleveland, all of which were carried on under the style of "Six Little Tailors;" they also testify that they had copyrighted some ten years ago photographs of the six Jacobs brothers, which were placed on their business cards and other advertising under the title of "Six Little Tailors;" and that they used the words "Six Little Tailors," in every way they possibly could in the way of advertising; that they had received mail orders from various parts of the United States and Europe, and many from the city of Chicago, for suits of clothes. In the deposition of Mr. Jacobs many exhibits are made of the style of advertising in newspapers, posters and also copies of letters and envelopes received from various portions of the country making inquiries about suits, etc. He also testifies that the firm of "Six Little Tailors,"

is composed of six Jacobs brothers, who are a little below the medium size in stature, and that therefore the title " Six Little Tailors," is consistent with the makeup of their firm.

On the other hand, the appellant, Benjamin S. Mossler, testifies that appellants opened their place of business as " Six Big Tailors," at 357–359 State street some time in the month of February, and that there are six brothers in their family, all of whom are above the medium size in stature, and that the two appellants (brothers) had, before the opening of their establishment on State street as " Six Big Tailors," obtained the consent of the other four brothers to use that name.

There is no proof that any person had been misled or deceived by reason of the similarity of the names used by appellants and appellees.

A decree was entered restraining the defendants, their employes, agents, etc., from using by signs, cards, letterheads, or otherwise, in advertising the business of making and selling clothing, the style and words " Six Big Tailors," or any other words in imitation of complainants' said trade name, or resembling the same.

Mr. Justice Waterman delivered the opinion of the Court.

This was an action to restrain the use of the words " Six Big Tailors " in such a way as to infringe upon the rights of the complainants under their trade name of " Six Little Tailors."

No person is entitled to represent his wares as being the goods of another man, or articles of his manufacture as having been made by another, and no person is by the law permitted to use any mark, sign, symbol, name, device or other means, whereby he makes a false representation, or deceives as to his own goods, or as to the goods of another, or whereby, without himself making a false representation to a buyer who purchases from him, he enables such buyer to tell a lie or to make an untrue representation to somebody else who is the ultimate customer. Nor is it a defense to

Mossler v. Jacobs.

an action, the gist of which is a charge of deception, to reply that the words uttered by the defendant were the literal truth, for the truth may be stated in a way likely to, and that does, deceive. What is required is, that a party shall not conduct his business so that by what he says or does, he deceives customers to their injury, or to that of a competitor.

A man may not use his own name for the purpose of deception, and such fraudulent use will be enjoined. Fair competition in business is legitimate and promotes the public good, but an unfair appropriation of another's business by using his name or trade mark, or an imitation thereof calculated to deceive the public, is not permissible and will be enjoined by a court of equity. Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 40 Ill. App. 430; Same, 142 Ill. 509; Reddaway v. Banham, House of Lords, opinion filed March 26, 1896; Celluloid Co. v. Cellonite Co., 32 Fed. Rep. 97.

While the court is not bound to interfere where ordinary attention will enable the purchasers to discriminate between the trade-marks used on the goods manufactured by different parties, nevertheless, the character of the article, the use to which it is put, and the kind of people who are likely to ask for it, as well as the manner in which it is probable it will be ordered, must not be lost sight of. Popham v. Cole, 66 N. Y. 69; 23 Am. Rep. 22, and cases there cited; Morgan's Sons v. Troxell, 89 N. Y. 292; 42 Am. Rep. 294; Manufacturing Co. v. Trainer, 101 U. S. 51; Ball v. Siegel, 116 Ill. 137; Reed v. Richardson, 45 L. T. (N. S.) 54; Beard v. Turner, 13 Id. 746; Leidesdorf v. Flint, 7 N. W. Rep. 174; Eggers v. Hink, 63 Cal. 445; Morgan's Sons Co. v. Troxell, 23 Hun, 932; Ewing v. Johnston, L. R. 18, Ch. Div. 612; Apollinaris Co. v. Scherer, 27 Fed. Rep. 22; N. K. Fairbank Co. v. Swift & Co., 64 Ill. App. 477.

We regard the words "Six Big Tailors" as so similar to the complainants' trade name of "Six Little Tailors" that it is calculated to deceive the unwary; that confusion is likely to arise therefrom, and thus that it is probable pur-

chasers may be entrapped into buying what they did not intend; that is, goods of appellants, when intending to buy of complainants.

We can hardly think, in view of the testimony, that appellants chose the name "Six Big Tailors" without first considering the publicity and value which complainants' trade name had acquired, and with the thought that by the adoption of a very similar name they could avail themselves of the reputation of a rival. We are the more inclined to this view because of the fact that while the complainants' firm is composed of six tailors, appellants' is made up of two only. Appellants appear to have been guilty of unfair competition in business.

While it does not appear that thus far any one has been deceived, we do not think that complainants are obliged to wait until injury has actually occurred; it is sufficient that it is probable customers would be misled.

The tendency to abbreviate is such that nearly all firms and corporations are ordinarily spoken of, and their names remembered by, a portion only of their true title.

Complainants' name is quite likely to be carried in mind as six tailors.

Even if appellants' firm were composed of six "big" tailors it would have no right to publish such fact for the purpose of the deception of the public and injury to complainants. Van Auken Co. v. Van Auken Steam Specialty Co., 57 Ill. App. 240.

Appellants insist that some of the advertisements put forth by complainants are manifestly untrue, and that therefore they should be denied relief, invoking the maxim, " he who comes into equity must come with clean hands." It does not appear that the advertisements mentioned had or have any connection with appellants or their business, or the controversy with complainants.

The maxim, behind which appellants seek to shield themselves, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected

with, the matter in litigation, so that it has in some meas-
ure affected the equitable relations subsisting between the
two parties, and arising out of the transaction; it does not
extend to any misconduct, however gross, which is uncon-
nected with the matter in litigation, and with which the
opposite party has no concern.   When a court of equity is
appealed to for relief it will not go outside of the subject-
matter of the controversy, and make its interference to de-
pend upon the character and conduct of the moving party,
in no way affecting the equitable right which he, asserts
against the defendant, or the relief which he demands.
Pomeroy's Equity Jurisprudence, Sec. 399.

There is said to have been a suit upon a promissory note,
in which the defendants' counsel, in addressing the jurors,
told them that the plaintiff ought not to recover because he
was a horse thief; at this point the court interfered, refus-
ing to permit such argument to be made.

The decree of the Circuit Court is affirmed.