**AINTREE SCHOOL OF RIDING, INC. v
AINTREE CLUB, INC., et**

Common Pleas Court, Cuyahoga Co.

No. 495134. Decided March 18, 1940

Moran & Craig, Cleveland, for plaintiff.

Shuler, Smith & Freer, Cleveland, and W. K. Gardner, Cleveland, for defendant.

### OPINION

By WALTHER, J.

The plaintiff has filed a petition for injunction against the defendants, and in its prayer asks that the defendants be enjoined from using the name "Aintree" or any combination thereof in connection with any business involving the boarding of horses or instructions in horseback riding, and further asks the court to enjoin the defendants from harassing or injuring plaintiff's business by misrepresenting the facts regarding the identities of plaintiff and defendant corporations.

To this petition the defendants have filed a joint answer, and in their answer they ask that the prayer of plaintiff's petition be denied, and in their cross-petition the defendants pray that the plaintiff be enjoined from using the name "Aintree Club" in connection with this riding establishment, and that it be enjoined from using that name in any manner except as in its full corporate name "Aintree School of Riding, Inc."

On April 27, 1928, the "Aintree Park Company" was incorporated. It owned about 112 acres of land, and was organized for the purpose of selling lots in its allotment. It was intended to be a high class residential allotment, and, to make it attractive to prospective purchasers of lots, it laid out and established certain courses and paths for the riding of horses, and, while its technical and legal name was "Aintree Park Company", it conducted on its land the business of the "Aintree Club Company", from July, 1926, to November, 1935, and the entire tract became known generally to the public as "Aintree Club" and the "Aintree Club" property.

The Aintree Club Company was officially dissolved in November of 1935, but the development continued to be known to the public as "Aintree Club", and that name was associated with the legal name of "Aintree Park Company", and in the minds of the public they had reference to one and the same thing.

In 1936, the equipment, consisting of certain horses, saddles, bridles, and about 18 acres of land, the property of the Aintree Park Company, were leased for a period of three years to the plaintiff, Aintree School of Riding, Inc.

On December 3, 1936, the Aintree School of Riding, Inc., the plaintiff in this case, was incorporated under the laws of the state of Ohio, and the principal stockholders owning practically all of the stock are Captain Alenitch and his wife Mrs. Alenitch. During the lease above referred to this same Captain Alenitch was the instructor, manager, and in charge of the horses and other equipment of the leased premises and things.

When the Aintree School of Riding, Inc., was incorporated on December 3, 1936, the name "Aintree" in connection with that incorporation was used with the express consent of the owners of the Aintree Park Company, and was limited by them to its use in connection with the words "School of Riding, Inc."

On July 25, 1939, the defendant Aintree Club, Inc., was incorporated, and its business and operations are conducted on the property of Aintree Park Company and by the persons active in the business of the Aintree Park Company.

Prior to 1936, when the lease aforesaid was executed, this property not only was known as the "Aintree Club" property, but it was the place of business of the Aintree Club Company, and prior to the time of the beginning of the lease it had signs upon which were painted the words "Aintree Club".

As above stated the Aintree Club was incorporated in July, 1926, and its charter was cancelled in November, 1935, shortly before the lease above referred to was made. While the Aintree Club Company had no legal existence after that date, the Aintree Park Company continued to be known by the public as "Aintree Club", during all of the time that followed.

Upon the expiration of the lease above referred to Captain Alenitch opened up a school of riding at Chesterland Ohio, which is about fifteen minutes' ride by automobile from the location of the property of the defendants. He used not only the incorporated and official name of "Aintree School of Riding, Inc.," but he also caused his institution to be known as "Aintree Club" and the Aintree School of Riding, Inc., is now also known as "Aintree Club" and the defendant Aintree Club, Inc., is also carrying on business at the original location and is also known as "Aintree Club".

"Aintree" is the name of a famous race course in England, and has particular reference to activities of horses.

There are two questions involved in this lawsuit:

I. Does the use of the words "Aintree Club" by either of the parties to this lawsuit constitute unfair competiton; and

II. Is the public deceived by reason of the use of the words "Aintree Club"?

In **Buob v Carriage Company, 11 Oh Ap 266, 268,** it is said:

"Unfair competition, in its essence, consists in passing off, or attempting to pass off, on the public, the goods or business of one person as the goods or business of another."

In Hygia Water-Ice Company v N. Y. Hygia Ice Co., Ltd., 140 N. Y., 94, and in Continental Insurance Co. v Continental Fire Ins. Assn., 101 Fed. 255, it was held that it must be shown that the defendant's use of the name deceived some one or caused confusion as to the identity of the corporation.

In the **Cleveland Transfer & Carriage Co. v M. R. Brailey et, 23 O. C. C., (N.S.) 486, 488,** quoting from Coal Co. v American Cement & Oil Co., 130 Fed. 703, the Circuit Court of this county said:

"Unfair competition is distinguishable from the infringement of a trade mark in this: That it does not involve necessarily the question of the exclusive right of another to the use of the name, symbol, or device. A word may be purely general or descriptive, and so not capable of becoming an arbitrary trade mark, and yet there may be an **unfair use** (emphasis ours) of such word or symbol which will constitute unfair competition. Thus a proper or geographical name is not the subject of a trade mark but may be so used by another unfairly, producing confusion of goods, and so come under the condemnation of unfair trade, and its use will be enjoined * * *. Unfair competition is not confined to acts directed against the owners of trade marks or trade names, but exists wherever **unfair means** (emphasis ours) are used in trade rivalry. Equity looks not at what business the parties before the court are engaged in, but at honesty of or dishonesty of their acts. It is unfair to pass off one's goods as those of another person; it is unfair to imitate a rival's trade name or label."

Captain Alenitch, the principal stockholder in the Aintree School of Riding, Inc., the plaintiff herein, learned of the name "Aintree" in connection with

horses by reason of his lease with the defendants, and when that lease terminated he caused the plaintiff corporation to be incorporated using the name "Aintree" and causing the plaintiff to be incorporated as the "Aintree School of Riding, Inc.," with the express consent of the defendants, but in that consent **limiting** (emphasis ours) the use of the name "Aintree" to the name "Aintree School of Riding, Inc."

While it is true that for a period of about four years there was no corporation known as "Aintree Club Company" or "Aintree Club, Inc.," yet during all that time the property of the defendant Aintree Park Company was known to the public as "Aintree Club", and there is no doubt in the court's mind that the use of the word "Aintree", **in** connection with the word "Club", by the plaintiff constitutes a purpose on the part of the plaintiff to give the impression that the same "Club" which was located on the Aintree Park Company property is now located at the premises occupied by the Aintree Riding School, Inc.

Second, as to whether or not the public is deceived, it necessarily follows that, if the plaintiff is responsible for the impression that the former Aintree Club has moved its location from the location of the defendant corporation, it being only a short distance from the original location of the club, the public is deceived into believing that the "Aintree Club" is now located on the premises occupied by the "Aintree School of Riding, Inc.," and this deception to the public can not be approved.

The prayer of the petition is therefore denied and the petition is dismissed, and the prayer of the crosspetition that plaintiff be perpetually enjoined from using the name "Aintree Club" in connection with his riding establishment, through advertising or otherwise, and that it be enjoined from using the name "Aintree" in any manner except as in its full corporate name "Aintree School of Riding, Inc.," is granted.